UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                          :
DIAN SABO, *personal representative*                      :
*and as administrator of the estate of*                   :
*Richard Sabo, deceased*                                  :
                                                          :    CASE NO. 1:10-CV-00345
                              Plaintiff,                   :
vs.                                                        :    OPINION & ORDER
                                                          :    [Resolving Doc. Nos. 47, 55, 56, 59]
CITY OF MENTOR, *et al.*                                   :
                                                          :
                              Defendants.                  :
                                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Defendants City of Mentor and Officer Scott Tkach move this Court for summary judgment.

[Doc. 47.]  Plaintiff Dian Sabo, representative and administrator of the estate of Richard Sabo,

opposes the motion.  [Doc. 55.]  The Defendants replied.  [Doc. 59.]

        For the following reasons, the Court **DENIES IN PART** and **GRANTS IN PART** the

Defendants' motion for summary judgment.

## I. Background

        Plaintiff Dian Sabo brings this action against the City of Mentor and Mentor Police Officer

Scott Tkach for damages arising out of the death of her husband, Richard Sabo.  This lawsuit stems

from the February 5, 2009 shooting and killing of Richard Sabo by Officer Scott Tkach.

Specifically, Sabo asserts the following causes of action:  (1) a claim under 42 U.S.C. § 1983 for

excessive force against Officer Tkach in his individual capacity; (2) a claim under 42 U.S.C. § 1983

-1-

Case No. 1:10-CV-00345
Gwin, J.

for unreasonable seizure against Officer Tkach in his individual capacity; (3) a claim under 42 U.S.C. § 1983 against the City of Mentor for failure to train; (4) assault and battery under Ohio law against Officer Tkach and the City of Mentor; and (5) wrongful death under Ohio law against Officer Tkach and the City of Mentor.

On February 3, 2010, Plaintiff Dian Sabo filed suit in the Lake County Court of Common Pleas, Ohio. [Doc. 1.] On February 16, 2010, the Defendants removed the suit to federal court under 28 U.S.C. § 1441(a)-(b). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.

On February 5, 2009, Richard and Dian Sabo were at their home in Mentor, Ohio. [Doc. 47 at 1; Doc. 55 at 1.] Richard Sabo was seventy-two years old at the time. [Doc. 55 at 1.] Dian Sabo's granddaughter, Alesha Kovacik, and Kovacik's two young children were visiting the Sabos. [Doc. 47 at 1; Doc. 55 at 1.] After returning from an errand, Richard Sabo began acting strangely. [Doc. 47 at 1-2; Doc. 55 at 1.] Sabo was having visual problems, his face was flushed, and he was visually disoriented. [Doc. 47-1 at 17-19; Doc. 55 at 1-2.] He was also having difficulty walking and sitting down without falling. [Doc. 47 at 1.] Due to Richard's behavior, Dian Sabo asked Kovacik to take her children home. Soon after leaving, Kovacik called Dian Sabo and expressed concern that Richard may be having a stroke. [Id.] Dian Sabo agreed that Richard seemed seriously ill and gave Kovacik permission to call 911. [Id.; Doc. 55 at 2.]

Responding to Kovacik's 911 call, firefighter paramedics soon arrived at the Sabo residence. [Doc. 47 at 2; Doc. 55 at 2.] In all, four firefighter paramedics responded to the call and entered the Sabo's home. [Doc. 47 at 2; Doc. 55 at 2.] The paramedics attempted to give Richard Sabo medical attention. [Doc. 47 at 2; Doc. 55 at 2.] However, confused and disoriented, Sabo refused to

-2-

Case No. 1:10-CV-00345
Gwin, J.

cooperate.  [Doc. 47 at 2; Doc. 55 at 2.]  Sabo quickly became combative, demanding that the paramedics leave his home. [Doc. 55 at 2.]  Sabo also threatened the paramedics and told them that he was retrieving a firearm so he could shoot them.  [Doc. 47 at 2; Doc. 55 at 3.][1/]  Following the threat, the paramedics retreated from the home and returned to the fire engine that was parked outside.  [Doc. 47 at 2; Doc. 55 at 3.]  The paramedics asked Dian Sabo to accompany them to prevent a potential hostage situation.  [Doc. 55 at 3.]  At first Dian Sabo refused, but soon after decided to accompany the paramedics.  [Doc. 47 at 3.]

During the encounter with Richard Sabo, the paramedics radioed the Mentor Police Department for support.  [Doc 47 at 3; Doc. 55 at 3.]  While en route, the police were told that Sabo had a gun and was combative.  [Doc. 47 at 3-4; Doc. 55 at 3.]  When the police arrived at the scene, Dian Sabo told them that Richard was armed with a shotgun.  [Doc. 47 at 5.]  The arriving police established a defensive perimeter around the home.  [Doc. 47 at 4; Doc. 55 at 3.]  The fire truck that firefighter paramedics arrived in was parked on the western perimeter, on the street in front of the Sabo's home.  [Doc. 47 at 4; Doc. 55 at 3.]  Other arriving police officers established perimeters on the southern and eastern sides of the home.  [Doc. 47 at 3; Doc. 55 at 3.]  Most of the officers positioned directly in front of the home were stationed behind the fire engine or police vehicles.  [Doc. 47-8; Doc. 47-9; Doc. 47-10.]  Although the SWAT team was not called, at least three of the officers at the scene were members of the Mentor Police Department SWAT team.  [Doc. 47 at 5.]

Officer Scott Tkach and another officer established the northern perimeter, taking position in the second floor of a home immediately to the rear of the Sabo residence.  [Doc. 47 at 4-5; Doc.

_____

[1/] Richard Sabo may also have become involved in a scuffle with the paramedics, pushing or hitting two of them. [Doc. 47 at 2.]  The Plaintiff does not dispute that fact, but makes no mention of it in her briefing.

Case No. 1:10-CV-00345
Gwin, J.

55 at 3.]  From this vantage point, Tkach could see the entire rear of the home and down the driveway on the eastern side of the house.  [Doc. 47 at 5; Doc. 55 at 3.]  A car and an Emergency Medical Services vehicle remained parked in the Sabo's driveway.  [Doc. 47-15 at 4; Doc. 47-11 at 16.]  Tkach was armed with an M16 rifle.  [Doc. 47-11 at 3, 7.]  While watching the rear of the Sabo residence, Tkach received word over the radio that Richard Sabo was armed with a shotgun.  [Doc. 47-15 at 4.]

In an attempt to diffuse the situation and to assess Richard Sabo's medical condition, Lieutenant Lehner – the highest ranking police officer on the scene – asked Dian Sabo to call her husband Richard, who was still inside.[2/]  [Doc.  47 at 6; Doc. 55 at 4.]  Lehner instructed Dian Sabo to tell Richard that he should come outside with his hands up so that the police could see he was not armed.  [Doc. 47 at 6.]  Dian Sabo called her husband twice – the first time he answered and acted confused and the second time he did not answer the phone at all.  [Doc. 47-1 at 19.]

However, just a few minutes after the phone calls, an officer spotted Richard Sabo exiting the house from a side door armed with a gun.  [Doc. 47 at 6; Doc. 55 at 4.]  Sabo walked down the driveway between the Emergency Medical Services vehicle and his home towards the officers positioned on the street.  [Doc. 47 at 7; Doc. 55 at 4.]  Sabo was carrying a shotgun, pointed skyward at a forty-five degree angle, with the barrel in his left hand and the stock of the gun in his right hand.  [Doc. 47 at 7; Doc. 55 at 4.]  From his position, Officer Tkach could see Richard Sabo walking down the driveway, but was unable to see any of the police officers or the paramedics in front of the house.  [Doc. 47 at 7-8; Doc. 55 at 4.]  None of the officers spoke with Sabo as he walked down the

---

[2/] Richard Sabo's nephew, Robert Manfroni, also attempted to contact Richard Sabo a few minutes earlier by phone.  [Doc. 59 at 13.]  It is not clear if this call was made by police request or on Manfroni's own volition.  During this call, Sabo also acted confused and repeatedly stated that he was going to shoot the police.  [Doc. 59 at 13.]

Case No. 1:10-CV-00345
Gwin, J.

driveway, nor did they order him to drop his gun.  [Doc. 47 at 7-8; Doc. 55 at 4.]  While Sabo was

walking down the driveway, Tkach fired a single shot, hitting Sabo in the back and killing him.

[Doc. 47 at 8; Doc. 55 at 5.]  Immediately after the shot was fired, many of the officers stationed near

vehicles in the street dropped down to take cover.  [Doc. 47-8; Doc. 47-14.]

The events immediately surrounding the shooting are disputed.  The Defendants allege that

Sabo paused after taking three steps and began to lower the barrel of the gun, walked three more

steps, and then completely leveled his gun in the direction of officers as though he was taking aim

to fire.  [Doc. 47 at 7.]  Knowing that officers and other safety personnel were stationed in the area

where Sabo was aiming, the Defendants argue that Tkach fired to prevent Sabo from shooting a

police officer.  [Doc. 47 at 7-8.]

The Plaintiff describes the shooting differently.  The Plaintiff alleges that Sabo walked down

the driveway holding his gun, taking about six or seven steps.  [Doc. 55 at 5.]  Sabo stopped and

began to turn; as he turned, the gun barrel dropped.  [*Id.*]  When the barrel dropped, Officer Tkach

fired.  [*Id.*]  Under the Plaintiff's telling, Richard Sabo posed no immediate threat to the officers

because he never pointed the gun or acted in an otherwise threatening manner.

On August 24, 2010, the Defendants filed a motion for summary judgment.  [Doc. 47.]  The

Defendants say that they are entitled to summary judgment on the grounds that:  (1) all claims

brought under 42 U.S.C. § 1983 against Officer Tkach much be dismissed since Tkach is entitled

to qualified immunity; (2) the Plaintiff's *Monell* claim against the City of Mentor must be dismissed

because the Plaintiff failed to produce any evidence that City policy or procedure caused the alleged

constitutional violations; and (3) the Plaintiff's Ohio state law claims must be dismissed since both

the City of Mentor and Officer Tkach are entitled to sovereign immunity under Ohio Revised Code

Case No. 1:10-CV-00345
Gwin, J.

Chapter 2744.  The Plaintiff opposes the motion.  [Doc. 55.]  The Defendants replied.  [Doc. 59.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004).  The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the non-moving party rely upon mere allegations or denials of its pleadings.  Fed. R. Civ. P. 56(e).  In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

Case No. 1:10-CV-00345
Gwin, J.

1477 (6th Cir.1989) (internal quotation omitted).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301.

### III. Analysis

*III.A    Qualified Immunity*

The Plaintiff pleads causes of action under 42 U.S.C. § 1983, asserting violations of Richard Sabo's Fourth Amendment rights. "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sallier v. Brooks,* 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

In determining whether a defendant is entitled to qualified immunity, the Court must employ a two-part analysis. The Court must determine (1) whether, while viewing the facts in the light most

-7-

Case No. 1:10-CV-00345
Gwin, J.

favorable to the plaintiff, a violation of a constitutional right occurred and (2) whether the constitutional right at issue was clearly established at the time of the defendant's conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).[3/]  Courts have discretion, based on the circumstances of the case, to decide which of the two inquiries should be addressed first. *Pearson*, 129 S. Ct. at 818 (2009).

### i.  Constitutional Violation

The Plaintiff says that Officer Tkach was not justified in shooting Richard Sabo and that, as a result, Sabo's Fourth Amendment rights were violated. [Doc. 1-1.] Specifically, the Plaintiff says that the shooting was an excessive use of force and was an unreasonable seizure. [Doc. 1-1.] The Defendants argue that Officer Tkach's actions were reasonable, saying that his use of force was justified under the circumstances. [Doc. 47 at 12.]  Because Richard Sabo was seized by deadly force, a determination of whether that force was arguably unreasonable will resolve both of the alleged Fourth Amendment violations.

"All claims that law enforcement officers have used excessive force – deadly or not . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Courts apply the "objective reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not

---

[3/] When analyzing claims of qualified immunity, courts in the Sixth Circuit also sometimes use a three-step analysis. Under the tripartite approach, a court must also analyze whether "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005).  However, since this step was not noted by the Supreme Court in *Saucier* and *Pearson*, this inquiry is no longer mandatory. *Carter*, 408 F.3d at 311.  Rather, the Sixth Circuit Court of Appeals has explained that step three is now merely a useful tool in certain cases in increasing the "clarity of the proper analysis." *Id.*  In cases of alleged excessive force, the third step is wholly superfluous since a requirement of a violation is a finding of objectively unreasonable force. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010).  Accordingly, the Court will not separately analyze this third step of the analysis.

-8-

Case No. 1:10-CV-00345
Gwin, J.

with 20/20 hindsight." *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008). "The calculus of

reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments . . . about the amount of force that is necessary in a particular situation."

*Graham*, 490 U.S. at 396-97. The inquiry is conducted objectively, based on the information

actually possessed by the officer at the time he or she acted. *Anderson v. Creighton*, 483 U.S. 635,

641 (1987).[4/]

In cases of deadly force, a court should look specifically to whether the officer had "probable

cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to

others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Williams v. City of Grosse Pointe Park*, 496

F.3d 482, 487 (6th Cir. 2007). However, "only in rare instances may an officer seize a suspect by

use of deadly force." *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005).

Taking the evidence in the light most favorable to Plaintiff, while also viewing it from the

perspective of a reasonable officer in Tkach's position, Plaintiff's evidence creates a genuine issue

of material fact as to whether deadly force was reasonable. It is not clear whether Richard Sabo

actually took aim with his gun while walking down the driveway. If Sabo was in fact aiming his gun

at the officers on the street, then Officer Tkach would likely be justified in using deadly force. *See*,

*e.g.*, *Burnette v. Gee*, 137 F. App'x 806, 810-11 (6th Cir. 2005) (summary judgment appropriate

where uncontroverted testimony showed that suspect who was suffering from medical emergency

pointed a rifle at police officer); *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 425 (6th Cir.

---

[4/] Several factors are of particular relevance in assessing the reasonableness of an officer's use of force. These factors are: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the police officers or others, and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). However, these factors are not exhaustive and the ultimate question is whether the totality of the circumstances justified the seizure. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

Case No. 1:10-CV-00345
Gwin, J.

2006) (affirming grant of qualified immunity where uncontroverted testimony showed suspect pointed gun at police).[5/]  However, if Sabo was not aiming his gun and was instead merely turning or walking away, then Tkach's conduct is far less reasonable.

The Plaintiff proffers sufficient evidence to bring this material issue into question.  For example, the Plaintiff cites to deposition testimony of Lieutenant Lehner that suggests Richard Sabo may have lowered his gun simply because he was turning around and that he may not have been aiming at the officers at all.  [Doc. 55 at 11; Doc. 56-6 at 11-12.]  Although the Defendants cite to a number of affidavits from other officers supporting Officer Tkach's statement that Sabo appeared to be aiming his gun, [Doc. 47 at 7-8], the Plaintiff's proffer of a conflicting statement raises an issue of material fact that should most appropriately be resolved by the trier of fact.[6/]  *See*, *e.g.*, *Jefferson v. Lewis*, 594 F.3d 454, 461 (6th Cir. 2010) (upholding denial of qualified immunity after use of deadly force where there was a factual dispute as to whether suspect was pointing a firearm at an officer).

### ii.  Clearly Established Right

Because the Plaintiff establishes that a reasonable jury could find Officer Tkach's use of

---

[5/] *See also Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (use of deadly force was reasonable where suspect was running at police with a machete); *Boyd v. Baeppler*, 215 F.3d 594, 604 (6th Cir. 2000) (upholding qualified immunity for police officers who used deadly force against a suspect who had a gun in his hand and who pointed it at officers); *Steele v. City of Cleveland*, 375 F. App'x 536, 542 (6th Cir. 2010) (deadly force was reasonable where suspect was wrestling with the police and was pointing a pistol at an officer at point blank range).

[6/] The Plaintiff also persuasively questions the reasonableness of Officer Tkach's conduct by pointing out facts suggesting that although Tkach could easily see Sabo walking down the driveway, that Tkach may have been otherwise isolated by his position in the neighboring home.  For example, Tkach admits that he could not see any of the officers at whom Sabo was allegedly aiming.  [Doc. 55 at 10.]  Thus, Tkach was likely unable to know whether any officers were in Sabo's potential line of fire.  Further, from Tkach's position, he may not have been able to hear whether any officers in front of the home gave Sabo an order or command that caused him to turn and lower the muzzle of the gun.  [Doc. 55 at 5, 10.]  Both of these factors bring the reasonableness of Tkach's action into question.  The Defendants dispute these points, citing facts that indicate that Tkach was in constant communication with the officers in front of the home.  [Doc. 59 at 8.]  These disputes are additional factual determinations that should most appropriately be resolved by a jury.  [Doc. 59 at 8.]

Case No. 1:10-CV-00345
Gwin, J.

force objectively unreasonable, the Court must now determine if such a finding would indicate that the Tkach violated a clearly established constitutional right. *Pearson*, 129 S. Ct. at 818. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "In determining whether a reasonable officer would have known that his conduct was unlawful, [a] [c]ourt looks first to the precedents of the Supreme Court, then to case law from this circuit, and finally to decisions from other circuits." *Humphrey v. Mabry*, 482 F.3d 840, 852 (6th Cir. 2007).

The Court concludes that Richard Sabo had a clearly established right not to be subjected to deadly force unless he posed an immediate threat to the police officers or the public. The Sixth Circuit, following Supreme Court precedent, held that a reasonable officer would understand that he is not entitled to shoot a person who does not pose an immediate threat. *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991) ("At the time of the shooting it was clearly established in the Sixth Circuit that [the Plaintiff] had a right not to be shot unless he was perceived to pose a threat to the pursuing officers or to others."); *Garner*, 471 U.S. at 11; *Green v. Taylor*, 239 F. App'x 952, 960 (6th Cir. 2007) ("*Garner* clearly establishes the right at issue; that is, the right not to be shot unless the suspect poses an immediate threat to the officers or other.").

Since the Plaintiff presents a conflicting version of facts that, if proven true, would establish a violation of a clearly established constitutional right, the Court concludes that Officer Tkach is not entitled to summary judgment on the issue of qualified immunity.

*III.B   Municipal Liability for Failure to Train*

The Plaintiff also claims that the City of Mentor failed to adequately train its officers on

-11-

Case No. 1:10-CV-00345
Gwin, J.

appropriate procedures during barricaded suspect situations and that this failure to train caused the

death of Richard Sabo.  [Doc. 55 at 17-18.]

To succeed on a claim for relief under § 1983 against a municipality, a plaintiff must prove

that the violation of a federal right occurred as the result of an illegal policy or custom.  *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A municipality may not be held liable under § 1983

simply upon the theory of respondeat superior.  *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th

Cir. 2005).  A governmental policy or custom, or a policy of inaction, must have been the moving

force directly causing the alleged violation.  *Bd. of County Comm'rs of Bryan County v. Brown*, 520

U.S. 397, 403-04 (1997).  In making a failure to train claim, the plaintiff must specifically prove that:

(1) the training program was inadequate for the tasks that officers must perform; (2) the inadequacy

was the result of deliberate indifference; and (3) the inadequacy was closely related to or actually

caused the injury.  *Ciminillo*, 434 F.3d at 469.

The Plaintiff says that Lieutenant Lehner – the commanding officer on the scene – was

inadequately trained on when the hostage negotiation and SWAT teams should be contacted and

utilized.  [Doc. 55 at 18.]  The Plaintiff further claims that the lack of training caused Richard Sabo's

death, that this unfortunate result was foreseeable, and that the lack of training constituted deliberate

indifference on the part of the City of Mentor.  [*Id.*]  The Defendants argue that the Plaintiff fails to

proffer sufficient evidence to create genuine issues of material fact regarding any of the elements of

a claim for failure to train under § 1983.  [Doc. 59 at 12-17.]

The first element of a claim for failure to train is that the existing training program was

inadequate for the tasks that the officers must perform.  *Ciminillo*, 434 F.3d at 469.  The Plaintiffs

proffer testimony from Captain Knight indicating that there was no formal training program in place

-12-

Case No. 1:10-CV-00345
Gwin, J.

that taught officers when they should call the hostage negotiation team.  [Doc. 55 at 19.]  The hostage negotiation team is a specialized unit within the Mentor Police Department trained to handle communication with barricaded suspects.  [*Id.*]  The Plaintiff argues that the absence of formal training is sufficient to create a material issue of fact as to the first element of the claim.  [*Id.*]  The Defendants offer testimony from Lehner indicating he received other training relevant to proper procedure for handling barricaded suspects.  [Doc. 59-2.]  Based primarily upon the testimony of Lehner and Knight, the Plaintiff demonstrates that there is a disputed issue of material fact regarding the adequacy of the Mentor Police Department's existing training programs.

Since there is an issue of material fact on the first element, the Court shall proceed to the second element of the failure to train claim.  To establish the second element, a plaintiff must prove that the inadequate training was the result of deliberate indifference.  *Ciminillo*, 434 F.3d at 469.  There are two situations justifying a conclusion of deliberate indifference.  The first is a failure to provide adequate training in light of foreseeable consequences and the second is where the city or municipality fails to act in response to repeated complaints of constitutional violations.  *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).  Here, the Plaintiff makes no allegation of repeated complaints and instead relies upon the claim that it was foreseeable that not training officers on when to summon the hostage negotiation team would result in the death of barricaded suspects.  [Doc. 55.]

To prove deliberate indifference under this approach, a plaintiff must show that there was an "obvious" potential for a constitutional violation.  *Plinton v. County of Summit*, 540 F.3d 459, 464-65 (6th Cir. 2008).  Aside from pointing to the statements of Captain Knight that the City of Mentor had no formal training program in place, the Plaintiffs proffer no evidence supporting their claim of deliberate indifference.  In light of the heavy showing required to prove deliberate indifference, the

-13-

Case No. 1:10-CV-00345
Gwin, J.

Plaintiff fails to create a genuine issue of material fact on the second element of the failure to train claim.  *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (stating that deliberate indifference would be found where, for example, police officers with firearms were given no training on use of deadly force).  Based upon the standard set forth by the Supreme Court in *City of Canton*, it is clear that any alleged violation here would not rise to the level of deliberate indifference.

The final element of a failure to train claim is that the inadequacy was closely related to or actually caused the injury.  *Ciminillo*, 434 F.3d at 469.  The Court finds that the Plaintiff also fails to create an issue of material fact on causation.  The Defendants offer uncontroverted testimony that specialized police units, such as the SWAT or hostage negotiation teams, require two to three hours to fully deploy after they are initially activated.  [Doc. 59 at 14.]  In this case, the Mentor Police Department was on the scene for approximately half an hour before Tkach shot and killed Richard Sabo.  [*Id.*]  Thus, even if Lieutenant Lehner had received training that would have allowed him to more timely request support from the hostage negotiation team, the shooting would still have occurred hours prior to the team's arrival.

Since the Plaintiff fails to create a genuine issue of material fact regarding the second and third elements of their § 1983 claim for failure to train, the Court finds that the City of Mentor is entitled to summary judgment on this cause of action.

III.C.   *Sovereign Immunity on State Law Claims*

The Plaintiff also brings claims for assault and battery and wrongful death under Ohio tort law.  [Doc. 1-1.]  The Defendant says that both Officer Tkach and the City of Mentor are entitled to sovereign immunity under Ohio Revised Code Chapter 2744 and that the state causes of action must be dismissed.  [Doc. 47.]

-14-

Case No. 1:10-CV-00345
Gwin, J.

Under Ohio law, political subdivisions are generally immune from liability under the Political Subdivision Tort Liability Act for "injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision . . . in connection with governmental or proprietary function."  *Theobald v. Bd. of County Comm'rs*, 332 F.3d 414, 416 (6th Cir. 2003) (quoting Ohio Revised Code § 2744.02(A)(1)).  As a preliminary matter, the Court finds that the death of Richard Sabo directly stemmed from a governmental function.  Therefore, unless one of the exceptions listed in Ohio Revised Code § 2744.02(B) applies, the City of Mentor is immune from suit.

The only immunity exceptions are for injuries or death arising out of:  (1) negligent operation of a motor vehicle; (2) negligent performance of proprietary functions; (3) negligent failure to repair public roads; (4) physical defects in public buildings due to employee negligence; and (5) express imposition of liability imposed elsewhere under the Ohio Revised Code.  Ohio Revised Code § 2744.02(B)(1-5).  None of those exceptions apply here and the Court finds that the City of Mentor is immune from suit on all state causes of action.[7/]

The Ohio Revised Code also provides immunity from liability to employees of political subdivisions.  Ohio Revised Coed § 2744.03(A)(6).  Under Ohio law, where an employee's activities are connected to "governmental or proprietary function[s]," the employee is entitled to immunity unless:  (1) the employee's acts were outside the scope of employment or official responsibilities; (2) the employee's acts were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed elsewhere under the Ohio Revised Code.  *Id.*  The Court begins the inquiry with a presumption of immunity.  *Cook v. City of Cincinnati*, 658 N.E.2d 814, 821 (Ohio Ct. App. 1995).

---

[7/] The City of Mentor is a political subdivision under the Ohio Revised Code.  Ohio Revised Code § 2744.01(F).

-15-

Case No. 1:10-CV-00345
Gwin, J.

The Plaintiff alleges here that there is a genuine issue of material fact regarding whether Officer Tkach acted recklessly in shooting Richard Sabo.  [Doc. 55 at 15.]Ohio courts have adopted the definition of "reckless" contained in the Second Restatement of Torts. *Marchetti v. Kalish*, 559 N.E.2d 699, 700 (Ohio 1990).  Under this formulation, an actor's conduct is reckless where he "act[s] or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize . . . that his conduct creates an unreasonable risk of physical harm to another." Restatement (Second) of Torts § 500.  The Ohio Supreme Court recently described reckless conduct as that which displays a "perverse disregard of a known risk." *O'Toole v. Denihan*, 889 N.E.2d 505, 517 (Ohio 2008).

Here, a determination of whether Officer Tkach's decision to shoot Richard Sabo was reckless turns on facts that are disputed.  Most relevant are determinations of whether Sabo was aiming his gun or merely stopping and turning when he was shot, whether Tkach was able to see the officers at which Sabo was allegedly aiming, and how closely Tkach remained in contact with the officers in front of the home during the minutes preceding the shooting.   Since all of these issues of material fact are disputed, the Court concludes that Officer Tkach is not entitled to summary judgment on the issue of sovereign immunity on the Plaintiff's state law causes of action. *See, e.g.*, *Reed v. City of Cleveland*, 2007 WL 30286, at *7 (N.D. Ohio, Jan. 3, 2007) (denying sovereign immunity under Ohio law where material facts bearing on officer's recklessness were in dispute); *Carpenter v. City of Cincinnati*, 2003 WL 23415143, at *13-14 (S.D. Ohio, Apr. 17, 2003) (same).

Case No. 1:10-CV-00345
Gwin, J.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment.  The Court **GRANTS** the motion with respect to the City of Mentor and dismisses all federal and state claims against Mentor.  Because there are issues of material fact regarding Officer Scott Tkach's conduct, the Court **DENIES** the motion for summary judgment as to Officer Tkach on both the state and federal causes of action.

IT IS SO ORDERED.


Dated: October 12, 2010                              s/          *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE